IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA 13 ⊃ 3: 09

| | | |
|---|---|---|
| BUILDERS FLOORING CONNECTION, LLC, | ) ) ) | DEBRA P. HACKETT, CLK U.S. DISTRICT COURT MIDDLE DISTRICT ALA |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 2:11cv 373 wha |
| BROWN CHAMBLESS ARCHITECTS, LLC; GOODWYN, MILLS, & CAWOOD, INC.; 2WR HOLMES WILKINS ARCHITECTS, INC.; JMR ARCHITECTURE, PC; PH&J ARCHITECTS, INC.; INFINITY ARCHITECTURE, P.C.; WEISS FLOORING, INC.; ROBERT P. WEISS, III; WANDA C. BLAKE; and MCKEAN & ASSOCIATES, ARCHITECTS, LLC; | ) ) ) ) ) ) ) ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

## COMPLAINT

## PARTIES

1.     Plaintiff Builders Flooring Connection, LLC ("BFC" or "Plaintiff") is

a corporation organized and existing under the laws of the State of Alabama which

does business throughout Alabama and has its principal place of business in

Elmore County, Alabama.  BFC is a commercial flooring contractor.

2.     Brown Chambless Architects, LLC ("Brown Chambless") is a

1

domestic corporation with its principal place of business in Montgomery County,

Alabama. Brown Chambless is in the business of providing architectural services,

including the preparation of bid specifications for the construction of commercial

buildings.

3.     Defendant Goodwyn, Mills & Cawood, Inc. is a domestic corporation

with its principal place of business in Montgomery County, Alabama. Goodwyn,

Mills & Cawood, Inc. ("GMC") is in the business of providing architectural

services, including the preparation of bid specifications for the construction of

commercial buildings.

4.     Defendant 2WR/HolmesWilkins Architects, Inc. ("2WR") is a

corporation organized and existing under the laws of the State of Alabama with its

principal place of business in Montgomery County, Alabama. 2WR is in the

business of providing architectural services, including the preparation of bid

specifications for the construction of commercial buildings. 2WR is an

architectural firm licensed by the State of Alabama.

5.     Defendant JMR Architecture, PC ("JMR") is a corporation organized

and existing under the laws of the State of Alabama with its principal place of

business in Montgomery County, Alabama. JMR is in the business of providing

architectural services, including the preparation of bid specifications for the

2

construction of commercial buildings. JMR is an architectural firm licensed by the State of Alabama.

6.     Defendant PH&J Architects, Inc., f/k/a Pearson, Humphries & Jones, ("PH&J") is a domestic corporation with its principal place of business in Montgomery County, Alabama.  PH&J is in the business of providing architectural services, including the preparation of bid specifications for the construction of commercial buildings.

7.     Defendant Infinity Architecture, P.C. ("Infinity") is a domestic professional corporation organized and existing under the laws of the State of Alabama with its principal place of business in Montgomery County, Alabama. Infinity is in the business of providing architectural services, including the preparation of bid specifications for the construction of commercial buildings.

8.     Defendant McKean & Associates, Architects, LLC ("McKean") is a domestic professional corporation organized and existing under the laws of the State of Alabama with its principal place of business in Montgomery County, Alabama.  McKean is in the business of providing architectural services, including the preparation of bid specifications for the construction of commercial buildings.

9.     Defendant Weiss Flooring, Inc. ("Weiss Flooring") is a domestic corporation with its principal place of business in Montgomery County, Alabama.

3

Weiss Flooring is in the business of commercial flooring and is a competitor of Plaintiff.

10.    Defendant Robert P. Weiss, III ("Weiss") is an individual citizen and resident of Alabama. At all times relevant hereto, Weiss was the owner and an officer, employee and/or agent of Weiss Flooring, Inc.

11.    Defendant Wanda C. Blake ("Blake") is an individual citizen and resident of Alabama. At all times material hereto, Blake was the vice-chancellor of financial affairs for Auburn University Montgomery and provided bid specifications for buildings and renovations at Auburn University Montgomery.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. This action arises under the statutes and laws of the United States, specifically, the Sherman Act, 15 U.S.C. § 1, *et seq*, and the Clayton Act, 15 U.S.C. § 15, and the laws of the State of Alabama. This Court has supplemental jurisdiction over the claims stated in Counts II through XI of this Complaint.

13.    Venue is properly found within this district because the Plaintiff is a resident hereof and the acts complained of took place in whole or in part within this judicial district.

4

## INTERSTATE COMMERCE

14.    Plaintiff and all Defendants are engaged in interstate commerce and their activities substantially affect interstate commerce.  Plaintiff is a flooring subcontractor which does business in Alabama and Mississippi.  All Defendants direct the purchase of a substantial amount of materials and supplies from manufacturers located in states other than the State of Alabama or those of which they are citizens.

## BACKGROUND

15.    Plaintiff, in its regular course of business,  discovered several publicly funded construction projects in the State of Alabama which were being bid by various general contractors.   The subcontractors for each of the projects were being determined through the competitive bid process.

16.    Plaintiff obtained "bid packages" for each project which contained specific bid specifications for finished floors, whether the finish was carpet, tile or wood.

17.    The bid specifications were prepared by the defendants Brown Chambless Architects, LLC; Goodwyn, Mills & Cawood, Inc.; 2WR Holmes Wilkins Architects, Inc.; JMR Architecture, PC; PH&J Architects, Inc.; Infinity Architecture, PC; and, McKean & Associates, Architects, LLC, (collectively the

5

"Defendant Architects") and given to general contractors responsible for obtaining

best prices through competitive bids. Several of the specifications for flooring

contractors required a flooring contractor be "pre-approved" prior to submitting a

bid. Plaintiff either submitted bids or attempted to become a pre-approved

flooring contractor in order to submit bids on all jobs referenced below.

      18.    From January 2009 through today, Defendants Weiss and Weiss Inc.

conspired with each of the Architect Defendants and Defendant Blake,

individually and collectively, to rig the bid specifications so that Weiss Flooring

would receive a substantial advantage toward being awarded the contracts.

Generally, bid specifications were rigged by the Architectural Defendants naming

pre-approved flooring contractors who would not submit bids, by requiring all

flooring contractors to have five year or ten years industry experience and have

been in business under the same name for that time period, and by requiring that

flooring subcontractors perform work using only employees instead of contract

labor. Due to this manipulation of bid specifications, Weiss Flooring received a

substantial advantage toward receiving the work and often was the only flooring

contractor meeting qualifications to be "pre-approved" or specifications for

installations.

      19.    Beginning sometime prior to 2009, the exact date being unknown to

6

Plaintiff, and continuing until at least May, 2011, all the above-named Defendants engaged in a combination, conspiracy and/or concert of action for the purpose of restricting the competitive bid process to allow Weiss Flooring to receive bids through a collusive, sham process camouflaged as a competitive bid process.

20.     During this time period, Defendants and other co-conspirators engaged in numerous overt acts in furtherance of the above-stated conspiracy, including but not limited to the following:

Brown Chambless Projects

21.     River Regions Health Center. Defendant Brown Chambless established finished flooring bid specifications for River Regions Health Center. The advertisements stated that only pre-qualified contractors would be invited to submit a bid, and the bid specifications named three pre-approved flooring contractors: (1) Covington Floors, ("Covington") which specialized in sports flooring such as gym floors and football fields, (2) Bonitz, a flooring company that has not done business in Alabama for the past four to five years, and (3) Weiss Flooring. No additional flooring contractors were pre-qualified.

22.     Alabama State Residential Complex - Phase 1. Defendant Brown Chambless established finished flooring bid specifications for the Alabama State Residential Complex - Phase 1. The bid specifications required a minimum of ten

7

years documented business experience with ten projects of similar size over the last 10 years.

23.    Dixie Electric Cooperative.  Defendant Brown Chambless established finished flooring bid specifications for a project for Dixie Electric Cooperative which mandated that the flooring contractor have 10 years verifiable experience as a commercial flooring contractor, and that the installation personnel be employees of that firm for one year.  The bid named three pre-approved flooring contractors: Covington, Bonitz, and Weiss Flooring.

## GMC Projects

24.    RSA Office Building - Mobile.  Defendant GMC established the finished flooring bid specifications for the RSA Office Building in Mobile, Alabama.  The bid specifications required a flooring contractor with 10 verifiable years under the name of the company contracting the work.  The bid named three companies as being pre-approved: Covington Floors, Professional Flooring of Birmingham, which was unaware of the job, and Weiss Flooring.

25.    The one bid packet for the RSA Office Building in Mobile, Alabama contained several separate bids for flooring.  The restrictions identified and the flooring contractors approved were identical for each of the four bid specifications.

8

26.     Troy State Complex.  Defendant GMC established the bid specifications for the Troy State Complex at Troy University in Troy, Alabama. The bid specifications required a flooring contractor with 10 verifiable years under the name of the company contracting the work and named three companies as being pre-approved flooring contractors: Covington Floors,  Professional Flooring ("Professional"), and Weiss Flooring.

27.     Athletic Field House.  Defendant GMC established the bid specifications for an Athletic Field House in  Greenville, Alabama.  The bid specifications required the flooring contractor to use its hourly employees to install all flooring materials.

28.     AUM - Bell Road.  Defendant GMC and Defendant Blake established the bid specifications for renovations at an AUM building on Bell Road in Montgomery, Alabama.  The bid specifications required a flooring contractor with 10 verifiable years of experience.

29.     Meade Building.  Defendant GMC established the bid specifications for Meade Building Renovations in Russell County, Alabama.  The bid specifications required a flooring contractor with 5 years of successful commercial flooring business and designation as an authorized carpet dealer.

30.     Goodwyn Hall.  Defendant GMC established bid specifications for

9

the first floor of Goodwyn Hall at Auburn University. The bid specifications

required a flooring contractor with 10 years experience under the same business

name and listed the following pre-approved flooring subcontractors: Acton

Flooring in Birmingham, Alabama ("Acton"), Covington, Professional, and Weiss

Flooring.

31.    Auburn University in Montgomery. Defendant GMC and Defendant

Blake established bid specifications for renovations to a building at 75

Technocenter Drive at Auburn University in Montgomery (" AUM"). The bid

specifications required a flooring contractor with 10 years experience under the

same business name. The bid specifications listed the following pre-approved

flooring subcontractors: Acton, Covington, Professional, and Weiss.

McKean Project

32.    Church of the Holy Spirit Elementary School. Defendant McKean

established the bid specifications for the Church of the Holy Spirit Elementary

School project in Montgomery, Alabama. Bid specifications required the flooring

contractors to have been in business for ten years under the same name and pre-

approved the following companies as flooring contractors: Covington,

Professional, and Weiss.

Defendant 2WR/HolmesWilkins Projects

10

33.     RSA Judicial Office.  Defendant 2WR established the bid specifications for the RSA Judicial Office Building in Montgomery, Alabama. Bid specifications required the flooring contractors use hourly employees for the carpet installation and pre-approved the following companies as flooring subcontractors:  Covington, Professional, and Weiss.

34.     RSA Building on S. Union.  Defendant 2WR established bid specifications for the RSA building at 135 S. Union Street in Montgomery, Alabama.  The bid specifications required the flooring contractors use hourly employees for the carpet installation and pre-approved the following companies as flooring subcontractors:  Covington, Professional Flooring, and Weiss.

35.     AUM Taylor Center.        Defendant 2WR established bid specifications for the AUM Taylor Center in Montgomery, Alabama.  The bid specifications required the flooring contractor to be in business under the same name for ten years and limited bids to the pre-approved flooring contractors listed: Covington, Professional Flooring, and Weiss.

36.     RSA Office on Dexter Avenue.  Defendant JMR and 2WR Holmes Wilkins created the bid specifications for a project on the seventh floor of the RSA office on Dexter Avenue in Montgomery.   The day before the bids were due, JMR set forth an addendum which named pre-approved flooring contractors:

11

Commercial Flooring Services in Huntsville, Alabama, Covington, Classic

Flooring in Birmingham, Alabama, Sanders Hyland Corporation in Mobile,

Alabama, Jones Floor Covering in Pensacola, Florida and Weiss Flooring.

Defendant PH&J Projects

37.   RSA Tower, Montgomery.  Defendant PH&J established bid

specifications for a project on the fifth floor of the RSA Tower in Montgomery,

Alabama.  The bid specifications for the flooring subcontractor required a

subcontractor with five years experience whose installers were employees of the

company.  The pre-approved flooring subcontractors were: Acton, Covington,

McAdams (out of business), Terry Fry Flooring from Birmingham and Weiss

Flooring.

38.   RSA Headquarters.  Defendant PH&J established bid specifications

for the RSA Headquarters in Montgomery, Alabama.  The bid specifications for

the finished flooring specified hard tile and listed Faulkner Myrick as the only

installer.  There were no specifications requiring installers to be employees of the

subcontractor or that the subcontractor be in business for five to ten years.  No

carpet was listed in the specifications.  Defendant PH&J then issued Addendum #2

to the bid package, which set forth the specifications for carpet and required the

installers to be employees of the subcontractor.  The Addendum #2 listed the

12

following pre-approved flooring subcontractors: Professional, Weiss Flooring, Gardner Carpet, McAdams and Bonitz.

39.    Montgomery County Court House Annex.  Defendant PH&J established bid specifications for the Montgomery County Court House Annex. The bid specifications for the flooring subcontractor required the subcontractor to have been in business for 5 years and be an authorized carpet dealer.

### Defendant Infinity Project

40.    Wellness Center.  Defendant Infinity Architect established bid specifications for a bid addendum on the Wellness Center project at Auburn University.  The original bid specifications required the flooring subcontractor to have three years of experience, but an addendum changed the specifications to require ten years in the business under the same name and a "Statement of Compliance" signed by the flooring subcontractor to verify that it met bid specifications, including the ten year requirement under the same name.

### COUNT I

### Violation Of The Sherman Anti-trust Act, 15 U.S.C. § 1, *et seq.*
### (Against All Defendants)

41.    Plaintiff adopts and incorporates by reference all preceding paragraphs of this Complaint.

42.     At a time unknown to Plaintiff, believed to be prior to January 2009,

Defendants Weiss and Weiss Flooring entered into a combination, conspiracy,

and/or agreement with one or more of the Architect Defendants and Defendant

Blake which constituted an unreasonable restraint of interstate trade and

commerce in the market for commercial flooring in the central southern

geographical areas of Alabama.

43.     As commercial jobs were planned, Defendants Weiss and Weiss

Flooring brought other Architect Defendants into the combination, conspiracy,

and/or agreement in unreasonable restraint of interstate trade and commerce.  The

purpose and effect of the aforesaid combinations, conspiracy and/or agreement

was to exclude competitors of Weiss Flooring from submitting bids for

commercial flooring projects, and to rig bids for such work so that Weiss Flooring

would obtain the bid, generally at a price substantially above the price which

would have been obtained through free and open competitive bids.

44.     As a direct and proximate result of the aforesaid combination,

conspiracy and/or agreement for bid rigging by and between the Defendants and

their co-conspirators, the work on the projects outlined above was awarded to

Weiss Flooring.

45.     Plaintiff has been injured in its business as a result of unlawful

14

activities of the Defendants and their co-conspirators in that Plaintiff has lost profits and lost an ability to prosper and gain more profits.

Wherefore, Plaintiff demands judgment against the Defendants, jointly and/or severally for treble damages, pre-judgment interest and costs of this suit, including reasonable attorney's and expert's fees under Section 4 of the Clayton Act.

**COUNT II**

**Interference with Business Relations**
**(Weiss Flooring, Weiss and Brown Chambless)**

46.    Plaintiff adopts and incorporates by reference all preceding paragraphs of the Complaint.

47.    Plaintiff contacted Defendant Brown Chambless and requested to become pre-approved in order to bid on the River Regions Health Center project, the Alabama State Residential Complex project, and the Dixie Electric Cooperative project (sometimes collectively the "Brown Chambless Projects")

48.    Defendants Weiss, Weiss Flooring, Inc., and Brown Chambless knew of Plaintiff's attempts to become pre-qualified and bid on these projects.

49.    Defendants Weiss, Weiss Flooring, and Brown Chambless knew Plaintiff was qualified to perform the work specified and knew of Plaintiff's intent

to submit a competitive bid to the general contractor.

50.     Defendants Weiss, Weiss Flooring, and Brown Chambless, individually and collectively, via a conspiracy, excluded Plaintiff as a pre-approved bidder and otherwise prevented Plaintiff from submitting competitive bids to the general contractor of each project.

51.     As a proximate consequence of Defendants Weiss's, Weiss Flooring, Inc.'s, and Brown Chambless's intentional interference with a business relationship between Plaintiff and each of the general contractors on the River Regions Health Center project, the Alabama State Residential Complex project, and the Dixie Electric Cooperative project, Plaintiff was caused to lose profits it would have made on the jobs.

Wherefore, Plaintiff demands judgment against the Defendants Weiss, Weiss Flooring, and Brown Chambless, jointly and/or severally for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

## COUNT III

### Interference with Business Relations

### (Weiss Flooring, Weiss, GMC and Blake)

52.     Plaintiff adopts and incorporates by reference all preceding

16

paragraphs of the Complaint.

53.    Plaintiff contacted Defendant GMC to become pre-approved to bid on

the RSA Office Building project, the Troy State Complex project, the Athletic

Field House project, the AUM Bell Road project, the Meade Building project, the

Goodwyn Hall project, and the Auburn University in Montgomery project

(sometimes collectively "The GMC Projects").

54.    Defendants Weiss, Weiss Flooring, Inc., and GMC knew of

Plaintiff's attempts to become pre-qualified and bid on the projects, and Blake was

aware of Plaintiff's attempt to become pre-qualified to bid on the AUM Bell Road

project and the AUM project at 75 Technocenter Drive.

55.    Defendants Weiss, Weiss Flooring, GMC and Blake knew Plaintiff to

be qualified to perform the work specified and knew of Plaintiff's intent to submit

a competitive bid to the general contractors on each of the GMC projects.

56.    Defendants Weiss, Weiss Flooring, GMC, and Blake, individually

and collectively, via a conspiracy, excluded Plaintiff as a pre-approved bidder and

otherwise prevented Plaintiff from submitting competitive bids to the general

contractor of each project.

57.    As a proximate consequence of Defendants Weiss's, Weiss Flooring,

Inc.'s, GMC's, and Blake's intentional interference with the business relationship

between Plaintiff and each of the general contractors on the GMC projects,

Plaintiff was caused to lose profits it would have realized.

Wherefore, Plaintiff demands judgment against the Defendants Weiss,

Weiss Flooring and GMC, jointly and/or severally, for compensatory and punitive

damages in an amount to be determined by a jury, plus interest and costs.

## COUNT IV

### Interference with Business Relations

### (Weiss Flooring, Weiss, 2WR and JMR )

58.     Plaintiff adopts and incorporates by reference all preceding

paragraphs of the Complaint.

59.     Plaintiff contacted Defendant 2WR and JMR to become pre-approved

in order to bid on the RSA Judicial Office, RSA Building on S. Union, AUM

Taylor Center, and RSA Office on Dexter Avenue (sometimes collectively the

"2WR Projects"). Plaintiff believes 2WR and JMR are related companies because

one would advertise for bids on a project and the other's name would appear on

specific plans for the project.

60.     Defendants Weiss, Weiss Flooring, Inc., 2WR and JMR knew of

Plaintiff's attempts to become pre-qualified and bid on the projects.

61.     Defendants Weiss, Weiss Flooring, 2WR and JMR Architecture knew

Plaintiff to be qualified to perform the work specified and knew of Plaintiff's intent to submit a competitive bid to the general contractor.

62.    Defendants Weiss, Weiss Flooring, 2WR and JMR, individually and collectively, via a conspiracy, excluded Plaintiff as a pre-approved bidder and otherwise prevented Plaintiff from submitting competitive bids to the general contractor of each project.

63.    As a proximate consequence of Defendants Weiss's, Weiss Flooring, Inc.'s, 2WR's and JMR Architecture's intentional interference with the business relationship between Plaintiff and the general contractors for the 2WR projects, Plaintiff was caused to lose profits it would have realized.

Wherefore, Plaintiff demands judgment against the Defendants Weiss, Weiss Flooring, 2WR, and JMR, jointly and/or severally for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

## COUNT V

### Interference with Business Relations

### (Weiss Flooring, Weiss and PH&J )

64.    Plaintiff adopts and incorporates by reference all preceding paragraphs of the Complaint.

65.    Plaintiff contacted Defendant PH&J to become pre-approved in order

19

to bid on the RSA Tower project, the RSA Headquarters project, and the RSA Office project (sometimes collectively the "PH&J Projects").

66.    Defendants Weiss, Weiss Flooring, Inc., and PH&J knew of Plaintiff's attempts to become pre-qualified and bid on the projects.

67.    Defendants Weiss, Weiss Flooring, and PH&J knew Plaintiff to be qualified to perform the work specified and knew of Plaintiff's intent to submit a competitive bid to the general contractor on each project.

68.    Defendants Weiss, Weiss Flooring, and PH&J, individually and collectively, via a conspiracy, excluded Plaintiff as a pre-approved bidder and otherwise prevented Plaintiff from submitting competitive bids to the general contractor of each project.

69.    As a proximate consequence of Defendants Weiss's, Weiss Flooring, Inc.'s, and PH&J's intentional interference with the business relationship between Plaintiff and the general contractors for the PH&J projects, Plaintiff was caused to lose profits it would have made on the jobs.

Wherefore, Plaintiff demands judgment against the Defendants Weiss, Weiss Flooring, and PH&J, jointly and/or severally, for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

20

## COUNT VI

### Interference with Business Relations

### (Weiss Flooring, Weiss and Infinity )

70.    Plaintiff adopts and incorporates by reference all preceding paragraphs of the Complaint.

71.    Plaintiff contacted Defendant Infinity to become pre-approved to bid on the Wellness Center project.

72.    Defendants Weiss, Weiss Flooring, Inc., and Infinity knew of Plaintiff's attempts to become pre-qualified and bid on the project.

73.    Defendants Weiss, Weiss Flooring, and Infinity knew Plaintiff to be qualified to perform the work specified and knew of Plaintiff's intent to submit a competitive bid to the general contractor.

74.    Defendants Weiss, Weiss Flooring, and Infinity, individually and collectively, via a conspiracy, excluded Plaintiff as a pre-approved bidder and otherwise prevented Plaintiff from submitting competitive bids to the general contractor of the project.

75.    As a proximate consequence of Defendants Weiss's, Weiss Flooring, Inc.'s, and Infinity's intentional interference with the business relationship between Plaintiff and the general contractor on the Wellness Center Project,

Plaintiff was caused to lose profits it would have made from the job.

Wherefore, Plaintiff demands judgment against the Defendants Weiss, Weiss Flooring, and Infinity, jointly and/or severally for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

## COUNT VII

### Misrepresentation - Brown Chambless

76.   Plaintiff adopts and incorporates by reference all preceding paragraphs of the Complaint.

77.   Defendant Brown Chambless, in advertising bids for the Brown Chambless Projects, represented that its pre-qualification requirements and bid requirements were established, and that all bids would be reviewed in a manner consistent with the law to ensure that there was no agreement or collusion between prospective bidders and architects in restraint of freedom of competition.

78.   These representations were false and Defendant Brown Chambless knew they were false when it made them.

79.   The Plaintiff relied on the representations and contacted Brown Chambless to become pre-approved and submit bids.

80.   As a proximate consequence of these Defendants' intentional misrepresentations, Plaintiff was caused to incur costs and expenses, the loss of an

22

opportunity to bid on the projects, and lost profits it would have realized.

Wherefore, Plaintiff demands judgment against Defendant Brown

Chambless for compensatory and punitive damages in an amount to be determined

by a jury, plus interest and costs.

## COUNT VIII

## Misrepresentation - GMC

81.   Plaintiff adopts and incorporates by reference all preceding

paragraphs of the Complaint.

82.   Defendant GMC, in advertising bids for each of the GMC Projects,

represented that its pre-qualification requirements and bid requirements were

established, and that all bids would be reviewed in a manner consistent with the

law to ensure that there was no agreement or collusion between prospective

bidders and architects in restraint of freedom of competition.

83.   These representations were false and Defendant GMC knew they

were false when it made them.

84.   The Plaintiff relied on the representations and contacted GMC to

become pre-approved and submit bids.

85.   As a proximate consequence of these Defendants' intentional

misrepresentations, Plaintiff was caused to incur costs and expenses, the loss of an

opportunity to bid on the projects, and lost profits it would have realized.

Wherefore, Plaintiff demands judgment against Defendant GMC for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

## COUNT IX

### Misrepresentation - 2WR

86.    Plaintiffs adopts and incorporates by reference all preceding paragraphs of the Complaint.

87.    Defendant 2WR, in advertising for bids for the 2WR Projects, represented that its pre-qualification requirements and bid requirements were established, and all bids would be reviewed in a manner consistent with the law to ensure that there was no agreement or collusion between prospective bidders and architects in restraint of freedom of competition.

88.    These representations were false and Defendant JMR knew they were false when each was made.

89.    The Plaintiff relied on the representations and contacted JMR to become pre-approved and submit bids.

90.    As a proximate consequence of the Defendant's intentional misrepresentations, Plaintiff was caused to incur costs and expenses, the loss of an

24

opportunity to bid on the projects, and lost profits it would have realized.

Wherefore, Plaintiff demands judgment against Defendant 2WR for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

## COUNT X

### Misrepresentation - PH&J

91.    Plaintiff adopts and incorporates by reference all preceding paragraphs of the Complaint.

92.    Defendant PH&J, in advertising for bids on the PH&J Projects, represented that its pre-qualification requirements and bid requirements were established, and all bids would be reviewed in a manner consistent with the law to ensure that there was no agreement or collusion between prospective bidders and architects in restraint of freedom of competition.

93.    These representations were false and Defendant PH&J knew they were false when each was made.

94.    The Plaintiff relied on the representation and contacted PH&J to become pre-approved and submit bids.

95.    As a proximate consequence of these intentional misrepresentations, Plaintiff was caused to incur costs and expenses, the loss of an opportunity to bid

25

on the projects, and lost profits it would have realized.

Wherefore, Plaintiff demands judgment against Defendant PH&J for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

## COUNT XI

### Misrepresentation - Infinity

96.     Plaintiff adopts and incorporates by reference all preceding paragraphs of the Complaint.

97.     Defendant Infinity, in advertising for bids on the Wellness Center Project, represented that its pre-qualification requirements and bid requirements were established, and that all bids would be reviewed in a manner consistent with the law to ensure that there was no agreement or collusion between prospective bidders and architects in restraint of freedom of competition.

98.     These representations were false and Defendant Infinity knew they were false when each was made.

99.     The Plaintiff relied on the representations and contacted Infinity to become pre-approved and submit bids.

100.    As a proximate consequence of these intentional misrepresentations, Plaintiff was caused to incur costs and expenses, the loss of an opportunity to bid

on the projects, and lost profits it would have realized.

Wherefore, Plaintiff demands judgment against Defendant Infinity for compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs.

Respectfully submitted,

Charles A. Dauphin (DAU001)
Email: Cdauphin@BaxleyDillard.com
Baxley, Dillard, Dauphin, McKnight
& James
2008 Third Avenue South
Birmingham, Alabama 35233
Ph: 205.271.1100
Fx: 205.271.1108
ASB-5833-H65C

## PLAINTIFF REQUESTS TRIAL BY STRUCK JURY.

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AT:**

**Brown Chambless Architects, LLC**
c/o Donald Charles Brown
260 Commerce Street, Suite 200
Montgomery, AL 36104

**Goodwyn, Mills & Cawood, Inc.**
c/o William S. Cawood
2660 Eastchase Lane, Suite 200
Montgomery, AL 36117

**2WR/Holmes Wilkins Architects, Inc.**
c/o W. Murray Watson
166 Commerce Street
Montgomery, AL 36104

**JMR Architecture, PC**
c/o J. Michael Rutland
60 Commerce Street, Suite 1520
Montgomery, AL 36104

**PH&J Architects, Inc.**
c/o Griffin Harris, III
807 South McDonough Street
Montgomery, AL 36104

**Infinity Architecture, P.C.**
c/o E. Sam Butner
416 S. Perry Street
Montgomery, AL 36104

**Weiss Flooring, Inc.**
c/o Robert P. Weiss, III
8241 Jackson Trace
Montgomery, AL 36117

**Robert P. Weiss, III**
8241 Jackson Trace
Montgomery, AL 36117

**Wanda C. Blake**
Vice Chancellor of Financial Affairs
Auburn University at Montgomery
7440 East Drive
Montgomery, AL 36117

**McKean & Associates, Architects, LLC**
c/o Rory L. McKean
2815-B Zelda Road
Montgomery, AL 36106