IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| BUILDERS FLOORING CONNECTION, LLC, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:11cv373-MHT (WO) |
| BROWN CHAMBLESS ARCHITECTS, LLC; et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Builders Flooring Connection, LLC filed this action against defendant Wanda C. Blake and others, asserting a violation of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., as well as state-law claims of interference with business relations and misrepresentation. Blake is named in the antitrust count and one count of interference with business relations. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental).

This matter is now before the court on Blake's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), based on (1) state-action immunity from the antitrust laws; (2) Eleventh Amendment immunity; and (3) Alabama state-sovereign immunity.  The motion will be granted as to the antitrust claim and denied as to the only state-law claim against her.


## I. MOTION-TO-DISMISS STANDARD

In considering a motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  <u>See also</u> <u>Sea Vessel, Inc. v. Reyes</u>, 23 F.3d 345, 347 (11th Cir. 1994) (for the purposes of a "facial attack on the complaint" under rule 12(b)(1), "the allegations in [the] complaint are taken as true") (internal quotation marks omitted).

2

## II. BACKGROUND

This case arises out of a dispute over bidding for flooring contracts.  The plaintiff, Builders Flooring, alleges that a competitor, defendant Weiss Flooring, Inc., as well as its owner, defendant Robert P. Weiss, colluded with various architecture firms and individual architects, also named as defendants, to fix the bidding process to ensure Weiss Flooring would be awarded contracts for flooring projects.

Builders Flooring also alleges that Blake, vice-chancellor of financial affairs for Auburn University Montgomery ("AUM"), conspired with the other defendants "to rig the bid specifications so that Weiss Flooring would receive a substantial advantage toward being awarded the contracts."  First Am. Compl. (Doc. No. 75) at 6.  Specifically, Builders Flooring alleges that Blake conspired with defendant architecture-firm Goodwyn, Mills & Cawood, Inc. to rig the specifications for renovations at various AUM buildings.  Id. at 9, 10.

3

Blake was named in Count 1 (antitrust) and Count 3 (interference with business relations) of the first amended complaint.[1]

The defendants moved to dismiss the case on the ground that the allegations in the complaint were insufficient to state a plausible claim for relief. The court summarily denied those motions. Blake also moved to dismiss on immunity grounds. The court initially denied that motion as well, and, after she filed a motion for reconsideration and to stay, Blake appealed the denial. Because the motion for reconsideration was pending, the court of appeals suspended the appellate case; it has

---

1. Builders Flooring sought and was granted leave to file a second amended complaint (doc. nos. 140 & 153) but has not yet done so. See Administrative Procedures for Filing, Signing, and Verifying Pleadings and Documents in the District Court Under the Case Management/Electronic Case Files (CM/ECF) System in the United States District Court for the Middle District of Alabama, at 6 (upon receiving leave to file Amended Complaint, it is the attorney's obligation to file the amended complaint electronically). The second amended complaint is therefore not yet operative. Regardless, the relevant portions of the proposed second amended complaint are identical, and this opinion will apply to that complaint if and when it is filed.

since been dismissed as moot.   The court granted Blake's motion for reconsideration, vacated the denial of her motion to dismiss, and reinstated the motion to dismiss. The court subsequently heard oral argument on Blake's defense of immunity and requested supplemental briefing. The matter of Blake's entitlement to immunity is now ready for resolution.

## III. DISCUSSION

As to the antitrust claim, Blake argues that she is immune under both the specific doctrine of state-action immunity from antitrust laws.  As to the single state-law claim against her, she argues she is immune under the Eleventh Amendment and Alabama state-sovereign immunity, Ala. Const. Art. I, § 14.  Finally, if the antitrust claim is dismissed, Blake argues that the court should decline to exercise its supplemental jurisdiction over her as to any remaining state-law claim.

A. <u>Parker</u> Antitrust Immunity

Blake first argues that she is entitled to "state-action" immunity from the federal antitrust laws as to Count 1.  This so-called "<u>Parker</u>" immunity is grounded in <u>Parker v. Brown</u>, 317 U.S. 341 (1943).  In <u>Parker</u>, the Supreme Court considered a challenge under the Sherman Act to a California regulatory program aimed at restricting competition among growers in order to maintain prices. 317 U.S. at 346.  The Court rejected the argument that this regulatory scheme violated the Sherman Act.  The Court concluded that the State "as sovereign" had "imposed the restraint as an act of government which the Sherman Act did not undertake to prohibit."  <u>Id</u>. at 352.  In other words, <u>Parker</u> immunity exempts from federal antitrust regulation any action that a State undertakes as sovereign.  <u>See</u> <u>F.T.C. v. Phoebe Putney Health Sys., Inc.</u>, 133 S. Ct. 1003, 1010 (2013) ("the Act should not be read to bar States from imposing market restraints 'as an act of government'") (quoting <u>Parker</u>, 317 U.S. at 352).

Blake argues that she is entitled to Parker immunity. As the complaint alleges, she was at all relevant times the vice-chancellor of financial affairs for AUM.  First Am. Compl. (Doc. No. 75) at 4.    She provided bid specifications for buildings and renovations, including the specifications for renovations that Builders Flooring alleges she rigged.    Id. at 4, 9, 10.    It is well established that AUM, as a public university, is an arm of the State of Alabama.    See Cardwell v. Auburn Univ. Montgomery, 941 F. Supp. 2d 1322, 1328 (M.D. Ala. 2013) (Fuller, J.), and cases cited.    Thus, Blake argues, her actions as alleged were acts of the State of Alabama, and she therefore is entitled to the State's Parker immunity.

Blake's argument finds strong support in Saenz v. Univ. Interscholastic League, 487 F.2d 1026, 1027 (5th Cir. 1973).[2]  In Saenz, the plaintiff sued the University Interscholastic League ("UIL") and the State Director of

_____

2. The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

7

its Slide Rule Contest, a Mr. Lenhart.  Saenz had wanted
to enter his "Accuraspeed" slide rule in the contest and
alleged that Lenhart "defined UIL regulations arbitrarily
to exclude the Accuraspeed slide rule."  <u>Id</u>.  Saenz also
sued a competitor, Ridgeway, which was allowed to enter
the contest.  Saenz alleged that his exclusion "stemmed
from the defendants' conspiracy to thwart Accuraspeed's
potential   competition   with   Ridgway's   product   and
originated in a financial relationship between Ridgway and
Lenhart."  <u>Id</u>.  In other words, Saenz alleged that Lenhart
personally conspired to rig the UIL's regulations in order
to benefit Ridgway.  Similarly, in this case, Builders
Flooring has alleged that Blake personally conspired to
rig the bid specifications in order to benefit Weiss
Flooring.

     The former Fifth Circuit Court of Appeals granted
<u>Parker</u> immunity to UIL and Lenhart.  It concluded that the
UIL, "[a]s an integral part of the University of Texas at
Austin," constituted "a governmental entity outside the

ambit of the Sherman Act." _Id_. at 1028.  The court found
that, "This shield of immunity, of course, is not limited
to governmental agencies alone but extends as well to
officers or agents of the State." _Id_. (citing _Parker_, 317
U.S. at 350-51).   "As the state director of the UIL's
Slide Rule Contest," the court continued, "Lenhart was
clearly acting within the scope of his duties in
determining that Saenz's Accuraspeed failed to meet the
requirements of a 'standard slide rule' and in submitting
this decision to the UIL's Legislative Committee for
ratification."  _Id_.

     _Saenz_ is factually and legally directly on point in
this case.  As noted above, AUM, like UIL, is part of the
State.  _See Cardwell_, 941 F. Supp. 2d at 1328.  Therefore,
under _Saenz_'s rule, AUM shares in the State's _Parker_
immunity.  Similarly, Builders Flooring has conceded that
its suit arises out of Blake's actions as vice-chancellor.
Therefore she, like Lenhart, is entitled to share in AUM's
immunity.

This conclusion is only bolstered by the fact the university officer in <u>Saenz</u>, like Blake, was accused of a private conspiracy to rig the rules for some personal motive. Despite that alleged malfeasance, the <u>Saenz</u> court granted Lenhart immunity; therefore, Builder Flooring's allegation that Blake privately conspired with the architects does not affect her entitlement to immunity. If <u>Saenz</u> is good law, then Blake is immune.

Builders Flooring does not dispute that <u>Saenz</u> is on point; instead, it argues that subsequent developments (both by the Supreme Court and the Fifth and Eleventh Circuits) have established that only the legislatures and supreme courts of States are <u>ipso facto</u> entitled to immunity; all others must make the additional showing of at least a clearly articulated and affirmatively expressed state policy. Builders Flooring therefore argues that <u>Saenz</u> is no longer good law.

The court is sympathetic to Builders Flooring's argument. <u>Saenz</u> was decided 40 years ago, prior to nearly

all of <u>Parker</u>'s progeny; and, even at that time, the court granted immunity without engaging in any significant legal analysis.  In the intervening years, the Supreme Court has addressed <u>Parker</u> immunity in a variety of circumstances and has articulated three different analyses for the applicability of <u>Parker</u> immunity.

First, the Supreme Court has granted <u>ipso facto</u> immunity, with no further analysis required, in very limited circumstances: only where the challenged action was undertaken by the State's legislature or supreme court, acting in a legislative capacity.  <u>See</u> <u>Hoover v. Ronwin</u>, 466 U.S. 558, 567-68 (1984) ("under the Court's rationale in <u>Parker</u>, when a state legislature adopts legislation, its actions constitute those of the State and <u>ipso facto</u> are exempt from the operation of the antitrust laws," and "a state supreme court, when acting in a legislative capacity, occupies the same position") (citation omitted).  Second, in the case of private parties who seek to shield their anticompetitive conduct

in <u>Parker</u> immunity, the Court has required "first that 'the challenged restraint ... be one clearly articulated and affirmatively expressed as state policy,' and second that 'the policy ... be actively supervised by the State.'" <u>Phoebe Putney</u>, 133 S.Ct. at 1010 (quoting <u>California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.</u>, 445 U.S. 97, 105 (1980)). Third, the Court has held that sub-state governmental units, such as municipalities and counties, are not <u>ipso facto</u> entitled to <u>Parker</u> immunity. <u>See</u> <u>City of Columbia v. Omni Outdoor Adver., Inc.</u>, 499 U.S. 365, 370 (1991). The Court's test for cities is the first prong of its test for private persons; a city must establish a clearly articulated and affirmatively expressed state policy directing the anticompetitive behavior. <u>Town of Hallie v. City of Eau Claire</u>, 471 U.S. 34, 47 (1985).

The Supreme Court has never decided what analysis is appropriate to determine whether a state-level executive-branch official or agency is entitled to <u>Parker</u> immunity.

12

It has <u>not</u> held that those agencies and officials are <u>ipso facto</u> immune.  Indeed, the Court expressly reserved the question of whether even the governor is <u>ipso facto</u> immune.  <u>Hoover</u>, 466 U.S. at 568 n.17.

Every court of appeals addressing this issue has held that state-level executive officials and agencies, like the state legislature and supreme court, are <u>ipso facto</u> immune.  <u>See</u> <u>Saenz</u>, 487 F.2d at 1027; <u>Neo Gen Screening, Inc. v. New England Newborn Screening Program</u>, 187 F.3d 24, 29 (1st Cir. 1999) (finding <u>Parker</u> <u>ipso facto</u> applicable to executive branch, but with "possible caveats"); <u>Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.</u>, 810 F.2d 869, 876 (9th Cir. 1987); <u>Deak-Perera Hawaii, Inc. v. Dep't of Transp.</u>, 745 F.2d 1281, 1283 (9th Cir. 1984); <u>see also</u> <u>S. Carolina State Bd. of Dentistry v. F.T.C.</u>, 455 F.3d 436, 442 n.6 (4th Cir. 2006) (declining to address the question).  At least two district courts in other circuits have held likewise in cases involving public universities.  <u>See</u> <u>Pharm. &</u>

Diagnostic Servs., Inc. v. Univ. of Utah, 801 F. Supp.
508, 513 (D. Utah 1990) (Jenkins, J.); Bd. of Governors of
Univ. of N. Carolina v. Helpingstine, 714 F. Supp. 167,
176 (M.D.N.C. 1989) (Bullock, J.).

The court acknowledges that, as Builders Flooring
argues, the Supreme Court's Parker cases cast serious
doubt on that conclusion.  See Hoover, 466 U.S. at 568
("Closer analysis is required when the activity at issue
is not directly that of the legislature or supreme court,
but is carried out by others pursuant to state
authorization."); Southern Motor Carriers Rate Conference,
Inc. v. United States, 105 S.Ct. 1721, 1729 (1985) ("'not
every act of a state agency is that of the State as
sovereign'") (quoting Lafayette v. Louisiana Power 61 &
Light Co., 435 U.S. 389, 410, (1978) (plurality opinion));
Hoover, 466 U.S. at 591 (same); Southern Motor, 105 S.Ct.
at 1726 ("The circumstances in which Parker immunity is
available to private parties, and to state agencies or
officials regulating the conduct of private parties, are

14

defined most specifically by our decision in [Midcal].")
(emphasis added); Town of Hallie, 471 U.S. at 46 n.10 ("In
cases in which the actor is a state agency, it is likely
that active state supervision would also not be required,"
suggesting by negative inference that the other part of
the Midcal test, clear articulation, would apply to those
cases); see also S. Carolina State Bd. of Dentistry, 455
F.3d at 442 n.6 (noting that the Supreme Court had
"suggested" that executive branch officers are not ipso
facto immune).

However, in this case the court is bound by Saenz.
Under Eleventh Circuit law, trial courts "are bound to
follow a prior binding precedent 'unless and until it is
overruled by [the Eleventh Circuit] en banc or by the
Supreme Court.'" United States v. Vega-Castillo, 540 F.3d
1235, 1236 (11th Cir. 2008) (quoting United States v.
Brown, 342 F.3d 1245, 1246 (11th Cir. 2003)).  There is no
en banc Eleventh Circuit case overturning Saenz.  Builders
Flooring argues in essence that Saenz has been overruled

by the subsequent Supreme Court cases.   But to overcome
the prior precedent rule, the Supreme Court's "decision
must have actually overruled or conflicted with" the prior
precedent.   Id. at 1237 (quotation marks omitted); see
also United States v. Archer, 531 F.3d 1347, 1352 (11th
Cir. 2008) (prior precedent may also be "undermined to the
point of abrogation").   Because "[t]here is a difference
between the holding in a case and the reasoning that
supports that holding," the Eleventh Circuit's rule is
that "[e]ven if the reasoning of an intervening high court
decision is at odds with a prior appellate court decision,
that does not provide the appellate court with a basis for
departing from its prior decision."   Vega-Castillo, 540
F.3d at 1237.

   Applying these principles to the question of Parker
immunity, the court finds that it is bound.   Even though
Saenz may have been undercut, there is no Supreme Court
case that holds that executive officials and agencies are
not entitled to ipso facto immunity.   Rather, the Court's

16

various statements about that issue were all made in the
context of cases about <u>Parker</u> immunity for private
individuals or sub-state entities.  Cases about <u>Parker</u>
immunity in other contexts cannot have overruled <u>Saenz</u>, a
case about immunity for an executive agency.

Accordingly, this court concludes that, under binding
precedent, Blake is entitled to <u>Parker</u> immunity as to the
antitrust claim.


### B. State-Law Claim

<u>Parker</u> immunity disposes of only the antitrust claim;
the court must address Blake's other arguments as to the
remaining claim against her of interference with business
relations.  She makes three arguments: first, that she is
entitled to Eleventh Amendment immunity; second, that she
is entitled to Alabama's state-sovereign immunity; and
third, that the court should decline jurisdiction over
this claim in the exercise of discretion.


17

### i. Eleventh Amendment Immunity

The Eleventh Amendment shields the State itself as well as arms of the State from suit for damages. <u>Stroud v. McIntosh</u>, 722 F.3d 1294, 1297 (11th Cir. 2013). There appears to be no dispute that this suit is for damages and that AUM is an arm of the State. <u>See</u> <u>Cardwell</u>, 941 F. Supp. 2d at 1328 (finding AUM to be entitled to Eleventh Amendment immunity). Instead, Builders Flooring argues that it is suing Blake in only her individual capacity and that it seeks no damages from the State or from AUM.

When a state officer is sued for damages in her official capacity, she is entitled to the State's Eleventh Amendment immunity; when she is sued in her individual capacity, she is not. <u>Hobbs v. Roberts</u>, 999 F.2d 1526, 1528 (11th Cir. 1993). To determine in what capacity an officer is sued, the court looks to "the complaint and the course of proceedings." <u>Colvin v. McDougall</u>, 62 F.3d 1316, 1317 (11th Cir. 1995). "The main concern of a court in determining whether a plaintiff is suing defendants in

18

their official or individual capacity is to ensure the
defendants in question receive sufficient notice with
respect to the capacity in which they are being sued."
Young Apartments, Inc. v. Town of Jupiter, FL, 529 F.3d
1027, 1047 (11th Cir. 2008).  "In looking at the course of
proceedings, courts consider such factors as the nature of
plaintiff's claims, requests for compensatory or punitive
damages, and the nature of any defenses raised in response
to the complaint, particularly claims of qualified
immunity which serve as an indicator that the defendant
had actual knowledge of the potential for individual
liability."  Id.

    The complaint and course of proceedings in this case
are ambiguous on this point.   The language of the
complaint itself sheds no light on the question.[3]

_____

    3. The first amended complaint provides, "Defendant
Wanda C. Blake ... is an individual citizen and resident
of Alabama. At all times material hereto, Blake was the
vice-chancellor of financial affairs for Auburn
University Montgomery and provided bid specifications for
buildings and renovations at Auburn University
Montgomery."  First Am. Compl. (Doc. No. 75) at 4.  Each
                                        (continued...)

19

Builders Flooring seeks compensatory and punitive damages
from Blake as to the state-law claim, which suggests that
it has sued Blake in her personal capacity.  Blake, for
her part, has not raised qualified immunity as a defense
to the federal claim against her, a defense that would
suggest that she understood this to be an individual-
capacity suit.  Of course, the court is conscious of the
possibility that a litigant may refrain from asserting
qualified immunity precisely in the hopes that the court
will rely on that circumstance in characterizing the case
as an official-capacity suit.

   Regardless, in its briefing on the motion to dismiss
and in representations made to the court, Builders
Flooring has been perfectly clear that it is seeking to
sue Blake in her personal capacity only.  Given the
Eleventh Circuit's guidance that the core issue is <u>notice</u>,
Builders Flooring's statement at this early stage is

_____

     3(...continued)
party claims this language supports its argument; in the
court's view, it supports neither.

20

sufficient.  Nothing other than the motions to dismiss have been litigated in this matter.  If she did not before, Blake now has "actual knowledge of the potential for individual liability."  <u>Young Apartments</u>, 529 F.3d at 1047.  Alternatively, of course, the court could, and would, grant Builders Flooring leave to amend its complaint to explicitly state that it is suing Blake in her individual capacity, but that seems unnecessary. Blake is on notice; to insist on dismissal on this basis now would be gamesmanship.

Blake argues that she must have been sued in her official capacity because she "without question was operating in her official capacity" during the course of conduct which Builders Flooring alleges.  Br. in Support of Motion to Dismiss (Doc. No. 79) at 10.  But state officers sued in their personal capacities are almost always sued for things they did while operating in their official capacities.  <u>See, e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to

impose personal liability upon a government official for actions he takes under color of state law."). Therefore, the fact that her actions were taken as an AUM official does not determine in what capacity she is being sued. Her motion to dismiss to the extent it is based on the Eleventh Amendment is denied.

### ii. Alabama's State-Sovereign Immunity

Next, Blake raises Alabama sovereign immunity, Ala. Const. Art. I § 14. Builders Flooring responds that Alabama's state immunity does not apply to an officer's actions that are malicious, fraudulent, or in bad faith.

Section 14 provides, "That the State of Alabama shall never be made a defendant in any court of law or equity." "The wall of immunity erected by § 14 is nearly impregnable." Ex parte Davis, 930 So.2d 497, 500 (Ala. 2005) (internal quotation marks omitted). However, as with the Eleventh Amendment, § 14 does not necessarily immunize state officers from civil liability in their

individual capacities.  "Whether immunity serves as a
defense to an action against a state officer or employee
sued in his individual capacity depends upon the degree to
which the action involves a State interest. Our cases
adhere to the view that the State has an interest such as
will prohibit suit against the State official or employee
where the action is, in effect, against the State."  Id.
(internal quotation marks omitted).

"To determine whether an action against a State
officer is, in fact, one against the State, [the Alabama
Supreme] Court considers [1] whether a result favorable to
the plaintiff would directly affect a contract or property
right of the State, [2] whether the defendant is simply a
conduit through which the plaintiff seeks recovery of
damages from the State, ... and [3] whether a judgment
against the officer would directly affect the financial
status of the State treasury."  Bd. of Sch. Comm'rs of
Mobile Cnty. v. Weaver, 99 So. 3d 1210, 1218 (Ala. 2012)
(citations and internal quotation marks omitted).

In this case, Builders Flooring has alleged that Blake herself conspired with the other defendants.  In other words, the claim is <u>not</u> that AUM decided to conspire with the other defendants and that Blake merely carried out that decision.  There is, therefore, no reason to conclude that a favorable verdict would affect any contract or property right of the university, or that Blake has been sued merely as a conduit, or that a judgment will directly affect the university or state treasury.  Therefore, this suit is not, in effect, one against the State.

In addition, the Alabama Supreme Court has recognized, as one of the classes of cases that are not "against the state" and therefore not barred by § 14, "actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law."   <u>Id</u>. (internal

quotation marks omitted).  In this case, Builders Flooring

has alleged, at the least, that Blake acted in bad faith;

as such, she is not entitled to immunity.


      iii. Exercise of Supplemental Jurisdiction

     Finally, Blake argues that the court should exercise

its discretion and dismiss the state-law claim against her

now that the federal claim will be dismissed.

     The court has discretion to decline to exercise

supplemental jurisdiction under certain circumstances,

including if "the district court has dismissed all claims

over which it has original jurisdiction."  28 U.S.C.

§ 1367(c)(3); see also Carlsbad Tech., Inc. v. HIF Bio,

Inc., 556 U.S. 635, 639 (2009) ("A district court's

decision whether to exercise that jurisdiction after

dismissing every claim over which it had original

jurisdiction is purely discretionary").

     Blake's argument raises a legal question: does 28

U.S.C. § 1367(c) authorize a court to decline supplemental

jurisdiction over claims against a particular defendant when it has dismissed all the federal claims against <u>only</u> that defendant, as Blake argues?  Or does it authorize the court to decline supplemental jurisdiction only if it has dismissed the federal claims as to <u>all</u> defendants?  Courts appear to be split on this issue.  <u>Compare</u> <u>Gudenkauf v. Stauffer Commc'ns, Inc.</u>, 896 F. Supp. 1082, 1084 (D. Kan. 1995) (Crow, J.) ("As long as one of the parties to the suit has federal claims pending against it, the court has mandatory supplemental jurisdiction over all claims and parties related") <u>with</u> <u>Samedi v. Miami-Dade Cnty.</u>, 206 F. Supp. 2d 1213, 1223 (S.D. Fla. 2002) (Hoeveler, J.) (dismissing state-law claims against county despite live federal claims against other defendants) (citing <u>Kis v. County of Schuylkill</u>, 866 F.Supp. 1462 (E.D.Pa. 1994) (same)).

However, the court need not reach this issue.  Even if the court had the discretion to dismiss the state-law claim against Blake, it would decline to do so.  Under

26

those circumstances, the court would consider other factors, such as "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together," in determining whether to dismiss the claim against Blake. Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994). Here, it is clear that all the factors weigh in favor of Blake remaining in this case. To decline supplemental jurisdiction would be to invite Builders Flooring to bring its claim in state court; but this action will proceed in federal court based on the same facts and arguments against all the other co-defendants. A parallel proceeding against Blake alone would be judicially wasteful, inconvenient, and unfair to Builders Flooring. The court declines to dismiss the state-law claim against Blake.

***

Accordingly, it is ORDERED that the motion to dismiss (Doc. No. 78) filed by defendant Wanda C. Blake is granted in part and denied in part as follows:

(1) Count 1 of the first amended complaint, alleging a violation of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., is dismissed as to defendant Blake.

(2) Count 3 of the first amended complaint, alleging a state-law claim of interference with business relations, is not dismissed and will proceed in this case.

DONE, this the 16th day of January, 2014.


    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE